**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **KEITH WILLIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 4:17-CV-2357 - PLC** |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Deputy Commissioner of Operations,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## Memorandum and Order

Keith Willis ("Plaintiff") seeks review of the decision of Defendant Nancy Berryhill,

Deputy Commissioner of Operations ("Commissioner"), Social Security Administration, denying

his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

under the Social Security Act ("the Act").[1] The Court has reviewed the parties' briefs and the

administrative record, including the hearing transcript and medical evidence. For the reasons set

forth below, the Court affirms the Defendant's denial of Plaintiff's application.

### I.     *Procedural History*

On January 27, 2014, Plaintiff filed an application for DIB and SSI claiming that he

became disabled on June 20, 2012 due to "neuropathy of feet & legs, difficulty standing for long

periods of time, high blood pressure, learning disability, dyslexia." (Tr. 330) The Social Security

Administration ("SSA") denied Plaintiff's claim, and he filed a timely request for a hearing

before an administrative law judge ("ALJ"). (Tr. 450, 457) The SSA granted Plaintiff's request

for review and conducted a hearing in December 2015. (Tr. 372-428)

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge
pursuant to 28 U.S.C. § 636(c). (ECF No. 9)

The ALJ found that Plaintiff had "not been under a disability within the meaning of [the Act] from April 3, 2013, through the date of this decision." (Tr. 102) Plaintiff sought review of the ALJ's decision, and the SSA Appeals Council denied his request. (Tr. 1-4) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as Defendant's final decision. See 20 C.F.R. § 404.981.

## II.    Evidence before the ALJ[2]

### A.   Testimony at ALJ Hearing

Plaintiff was forty-four years old at the time of the administrative hearing in December 2015. (Tr. 374, 78) He stated that he completed the twelfth grade but had no college or vocational training and did not possess any professional certifications or licenses. (Tr. 381) Plaintiff testified about his extensive job history, which included: working as a cashier; setting up a Dollar Tree store; making signs for "the highway department"; operating a machine in factory that manufactured pipe fittings; cooking at McDonalds; performing custodial work at a grocery store and a school; and changing oil in the auto department at Walmart. (Tr. 383-92) In addition, Plaintiff worked three years at Sears in the appliance-repair department. (Tr. 389-90) Regarding that position, Plaintiff testified:

> Sometimes I had to go out to the vehicles and get them for the customers and then we had to write them up, write out the orders for them on the computer of what they were. Well, write them on paper first and then we'd write up what the customer wanted to have fixed, what the problem was.

(Tr. 390)

Plaintiff stated that he developed neuropathy in his hands approximately six months prior to the hearing. (Tr. 394) Plaintiff testified that, four months earlier, he underwent carpal tunnel

---

[2] Because Plaintiff's appeal relates to his educational level and the impairments affecting his hands, the Court limits its discussion of the evidence to evidence related to his education and the neuropathy in his hands.

surgery on his right hand which "didn't help at all." (Tr. 395) Because the carpal tunnel surgery did not improve Plaintiff's condition, his doctor did not recommend he undergo the surgery on his left hand. (Id.) Plaintiff described the neuropathy in his hands and forearms as "burning" with increased sensitivity in the tips of his fingers. (Tr. 396) Plaintiff took Neurontin and Cymbalta for his neuropathy but testified that his symptoms had "not g[otten] any better." (Tr. 397-98)

In regard to any mental impairments, the ALJ noted that Plaintiff had claimed a learning disability in his application for benefits. (Tr. 401) When the ALJ asked whether Plaintiff was alleging it was severe, Plaintiff's lawyer answered, "No, Your Honor. We would just mention the special education classes for consideration of the work history, but not severe. Not a severe impairment." (Tr. 401-02)

Plaintiff testified that, on an average day, he would "wake up, put the dog out, feed the dog, feed the cats, [and] lounge around the house." (Tr. 402) He cooked twice a month and washed dishes. (Id.) Regarding outside activities, Plaintiff attended church "once in a while" and went to the grocery store once a month. (Tr. 403) Every week, Plaintiff babysat for his three-year-old nephew and took him to the park. (Tr. 404) Plaintiff could lift his nephew but did not know how much the child weighed. (Id.)

The ALJ also heard the testimony of a vocational expert, who reviewed Plaintiff's work history and answered various hypothetical questions. (Tr. 406) The ALJ asked the vocational expert to consider a hypothetical with the same age, education, and past work as Plaintiff and the ability to perform work at the sedentary level with numerous limitations, including: never use foot controls; occasional fingering; "simple, routine tasks"; "simple work-related decisions"; and "tasks that do not require the ability to read or perform complex mathematical calculations." (Tr.

408, 410) The vocational expert responded that such individual could perform the duties of dowel inspector, bench hand, and weight tester. (Tr. 410-11) When the ALJ added the need for a "sit/stand option for four hours and remain on task" and "frequent breaks throughout the day," the vocational expert stated that the frequent breaks would preclude employment. (Tr. 411)

### B. Relevant Records

In October 1987, when Plaintiff was sixteen years old and in the tenth grade, his high school administered a Wechsler Intelligence Scale for Children--Revised ("WISC-R") test, which revealed IQ scores of: verbal IQ 88, performance IQ 93, and full-scale IQ 91, which was "average classification." (Tr. 669, 673-74) In February 1989, Plaintiff took the Wide Range Achievement Test--Revised (WRAT-R) and scored 69 for reading, 71 for spelling, and 69 for arithmetic, corresponding to reading and spelling at the fourth-grade level and arithmetic at the fifth-grade level. (Tr. 669, 673) Plaintiff maintained grade point averages of 0.750, 1.462, 1.330, and 1.290 during his four years in high school. (Tr. 655) Plaintiff graduated from high school while attending special education classes.

In his function report of February 14, 2014, Plaintiff checked boxes stating that he was able to pay bills, count change, handle a savings account, and use a check book. (Tr. 567) He stated that his alleged impairments affected his ability to lift, squat, stand, walk, kneel, climb stairs, concentrate, understand, and "get[] along with others." (Tr. 569) Plaintiff did not identify any difficulties sitting, reaching, using his hands, talking, remembering, or completing tasks. (Id.) He wrote that he did "not follow written instructions well but verbal I am fine with." (Id.) In the remarks section of the report, Plaintiff stated that his wife helped him complete the form because "it is sometimes hard for me to understand written information." (Tr. 570)

In regard to his physical impairments, Plaintiff's medical records reveal that, between February and October 2014, Plaintiff saw Dr. Nehal-Kumar Modh at Progressive Pain Management for foot and knee pain. (Tr. 859-77, 937-53) In June 2014, Dr. Modh noted that that Plaintiff experienced less pain and synesthesia symptoms with Cymbalta and had a "very active lifestyle." (Tr. 860)

Plaintiff first complained of hand and finger pain in April 2015. (Tr. 979) A nurse practitioner at Great Mines Health Center noted that Plaintiff suffered bilateral stiffness and a burning sensation, especially in his right hand. (Id.) Upon physical examination, the nurse practitioner observed positive Tinel's sign in the right wrist and pain with flexion. (Tr. 980) She diagnosed Plaintiff with carpal tunnel syndrome. (Tr. 981)

At a follow-up appointment in May 2015, Plaintiff presented with worsening tingling and numbness in both hands, the right more than the left. (Tr. 984) The nurse practitioner observed positive Phalen's test in both of Plaintiff's wrists. (Tr. 985) Later that month, Plaintiff presented to Dr. Julia Zevallos at Washington County Memorial Hospital. (Tr. 924) Dr. Zevallos administered nerve conduction testing and found that Plaintiff had nerve entrapment in both wrists and his right elbow, the right wrist most prominent, and right ulnar entrapment at the elbow. (Tr. 924-26) Repeat testing in July 2015 again revealed nerve entrapment, and Dr. Zevallos could not rule out sensory neuropathy. (Tr. 929-32) On August 3, 2015, Dr. Robert Lander performed a right-side carpal tunnel release. (Tr. 933-34)

Plaintiff's most recent medical record, dated August 17, 2015, was from Plaintiff's post-surgery, follow-up appointment with Dr. Ann Schumacher at Great Mines Health Center. (Tr. 996) Plaintiff reported pain in his lower legs and feet, as well as his right knee, but did not complain of pain in his hands or wrists. (Tr. 996-97) Dr. Schumacher examined Plaintiff's right

wrist and noted "swelling mild and presence of a scar recovering from carpal tunnel surgery, healing well." (Tr. 997) She also noted "normal exam" next to palpation, ROM, and stability. (Id.) Dr. Schumacher continued Plaintiff's medications, including Neurontin and ibuprofen. (Tr. 998)

### III. *Standards for Determining Disability Under the Act*

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

## IV.     The ALJ's determination

In a decision dated June 29, 2016, the ALJ applied the five-step evaluation set forth in 20 C.F.R. Sections 404.1520 and 416.920, and found that Plaintiff had the severe impairments of "diabetes mellitus, peripheral neuropathy and obesity." (Tr. 103) Additionally, the ALJ found that Plaintiff had the following nonsevere impairments: "learning disability, essential hypertension, carpal tunnel syndrome (resolved), osteoarthritis of the knees, and degenerative disc disease." (Tr. 104) At step three of the evaluation, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "paragraph B criteria"). (Tr. 106)

After thoroughly reviewing Plaintiff's testimony and medical and educational records, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Tr. 107) In particular, the ALJ pointed to evidence in the record that, "[a]t various times while the claimant has said he was disabled, he was injured playing softball, has gone camping and has taken a physically active role in the care of his [nephew] once per week. These activities are not consistent with his allegations of severe, debilitating pain." (Tr. 109) (citations to the record omitted).

The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a range of sedentary work with the following limitations:

> [H]e can never climb ramps or scaffolding; requires a sit-stand option, but can remain on task; can operate no foot pedals; can perform occasional fingering; can have no exposure to extremes of heat and cold; can have occasional interactions with the public, frequent interaction with coworkers and would require simple

routine tasks that do not require reading or mathematics, all of which are secondary to the side effects of medication and the effect of chronic pain on concentration, social interactivity and attention span.

(Tr. 107) At steps four and five of the sequential evaluation, the ALJ concluded that Plaintiff was unable to perform any past relevant work but had the RFC to perform other jobs that existed in significant numbers in the national economy. (Tr. 107-11) Specifically, the ALJ found, based on the testimony of a vocational expert, that Plaintiff could perform the jobs of dowel inspector, bench hand, and weight tester. (Tr. 110-11) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 111)

## V. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting

Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## VI.    Discussion

Plaintiff claims that the ALJ erred in formulating his RFC because the ALJ did not include sufficient limitations for Plaintiff's:  (1) level of education and writing ability; and (2) handling ability. [ECF No. 15 at 3-7] In response, Defendant contends that:  (1) Plaintiff's past work demonstrates an ability to perform the writing requirements of unskilled jobs; and (2) the ALJ adequately accounted for impairments to Plaintiff's hands by limiting him to "occasional fingering." [ECF No. 20 at 5-6]

### A.    Education and writing limitation

Plaintiff argues that the ALJ erred in failing to make correct findings as to Plaintiff's level of education and writing ability. [ECF No. 15]  More specifically, Plaintiff  argues that the ALJ improperly found that he had a twelfth grade education because the evidence shows that he lacked the ability to write beyond a fifth grade level. [ECF No. 15 at 3-4] In response, Defendant asserts that "Plaintiff had demonstrated a good work history since leaving school" and "had functioned independently for over 20 years[.]" [ECF No. 20 at 4] Further, Defendant contends that "at least two of the jobs cited by the vocational expert would [not] require more extensive writing than was required of Plaintiff in his past jobs, which he performed for years without problem." [Id. at 7]

As an initial matter, the Court addresses Plaintiff's argument, presented in his reply to Defendant's brief in support of the answer, that Defendant's brief presents new rationale and

findings in violation of the <u>Chenery</u> doctrine.[3] [ECF No. 21] According to this doctrine, "a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision." <u>HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala</u>, 164 F.3d 415, 418 (8th Cir. 1998) ("<u>HealthEast</u>") (quoting <u>Mayo v. Schiltgen</u>, 921 F.2d 177, 179 (8th Cir. 1990)). <u>See</u> <u>also</u> <u>Michigan v. Environmental Prot. Agency</u>, 135 S. Ct. 2699, 2710 (2015) (it is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action."). This prohibition on post-hoc rationalization "applies only when the agency 'fails to make a necessary determination of fact or policy.'" <u>Aubuchon v. Astrue</u>, No. 4:09-CV-465-DDN, 2010 WL 2870566, at *11 (E.D. Mo. July 19, 2010) (quoting <u>HealthEast</u>, 164 F.3d at 418).

Defendant's brief does not require the Court to consider new findings that were not present in the ALJ's decision. <u>See</u> <u>Alic v. Colvin</u>, No. 4:15-CV-1301-JAR, 2016 WL 5661622, at *8 (E.D. Mo. Sept. 30, 2016). The evidence Plaintiff cites as post-hoc rationalization – such as Plaintiff's testimony that his work at Sears involved "writing out customer orders" – was in the administrative record. Although not explicitly cited to by the ALJ, the ALJ in this case conducted an exhaustive review of all of the medical and educational information of record. Moreover, "judicial review of the ALJ's decision requires examination of the record as a whole." <u>Aubuchon</u>, 2010 WL 2870566, at *11 (citing <u>Pates-Fires</u>, 564 F.3d at 942). The Court therefore has a duty to examine the entirety of the record to determine if there is substantial evidence to support the ALJ's decision. <u>See</u> <u>id.</u>

Plaintiff challenges the ALJ's finding that Plaintiff had "at least a high school education," rather than a "marginal education." The SSA regulations explain that, when assessing a

---

[3] The <u>Chenery</u> doctrine originated in <u>Sec. & Exch. Comm'n v. Chenery Corp.</u>, 318 U.S. 80 (1943).

claimant's vocational background, "[e]ducation is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R. § 404.1564(a). The regulations define "high school education" to mean "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4). "Marginal education," on the other hand, means "ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2).

The Court agrees with Plaintiff that the educational records in evidence did not support a finding that Plaintiff had a "high school education," as defined by the regulations. However, the ALJ was not limited to Plaintiff's educational records when evaluating his education or intellectual abilities. The SSA acknowledges that "the numerical grade level that you completed in school may not represent your actual educational abilities." 20 C.F.R. § 404.1564(b). For this reason, when evaluating a claimant's education, the SSA also considers a claimant's daily activities, hobbies, and "[p]ast work experience and the kinds of responsibilities you had when you were working," which "may show that you have intellectual abilities[.]" 20 C.F.R. § 404.1564(a).

In regard to Plaintiff's learning disability, the ALJ explained: "The evidence of the claimant's learning disability is remote in time. The claimant had poor grades from 1987 to 1990, but has demonstrated a good work record since leaving school." (Tr. 104) The ALJ also found that Plaintiff's "good job history" undermined his claims of difficulty with concentration.

(Id.) Additionally, the ALJ gave "significant weight" to the psychiatric review technique performed by Alan Aram, Psy.D. (Tr. 439) Dr. Aram concluded that Plaintiff's mental impairments were non-severe and Plaintiff had: no restrictions of activities of daily living; no difficulties maintain social functioning; and only mild difficulties in maintaining concentration, persistence, and pace. (Tr. 439) Dr. Aram observed: "He was in LD classes for English and Math. Claimant has a strong work history, making upward of $20,000/year. He states he lost his last job b/c he could not understand the paperwork required for the job." (Id.)

Despite her finding that Plaintiff's learning disability was non-severe and he had a high school education, the ALJ included in the RFC limitations to accommodate his learning disability. Specifically, the ALJ limited Plaintiff to "simple routine tasks that do not require reading or mathematics[.]" (Tr. 107)

Plaintiff argues that the RFC was insufficient because it did not include limitations for writing. Plaintiff argues that this error was not harmless because the ALJ presented this RFC to the vocational expert in a hypothetical question and, in response, the vocational expert identified jobs that required some level of writing ability. Based on the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing jobs of: (1) dowel inspector, which required Level 1 reasoning, math, and language; and bench hand, which required Level 1 math and language and Level 2 reasoning.[4] DOT 669.687-014, 1991 WL 686074; DOT 700.687-062, 1991 WL 678937. Both of these positions required the ability to "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses." Id.

---

[4] The ALJ also found that Plaintiff could perform the job of weight tester. (Tr. 111) According to the DOT, weight tester required Level 3 reasoning, math, and language. DOT 539.485-010, 1991 WL 674890. It also required the ability to "write reports and essays with proper format, punctuation, spelling, grammar, using all parts of speech." Id. The reasoning, language, and writing levels of this job appears to exceed the limitations in Plaintiff's RFC.

Plaintiff points to evidence in the record suggesting that he lacked the ability to perform the writing required for these jobs. For example, he argues that his academic classes were special education, he maintained low grades, he wrote at a fifth-grade level at age eighteen, and his wife helped him complete his disability paperwork. However, when considering a claimant's educational level and intellectual abilities, the SSA may consider that person's work history. 20 C.F.R. § 404.1564(a). Here, Plaintiff had a long and varied work history. As the ALJ noted, Plaintiff "functioned independently for more than twenty years following [his] school days and maintained a good job history up to the original alleged onset date." (Tr. 104) Plaintiff's testimony also evidenced an ability to write, because he testified that his work at Sears required him to "write out" customer orders.

While Plaintiff's history of special education and low test scores suggests some level of intellectual disability, "[t]he mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ." Vance v. Berryhill, 860 F.3d 1114, 1120 (8th Cir. 2017) (quoting Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004)). The ALJ did not err in omitting from the RFC a limitation on writing. The ALJ reasonably found, based on the record as a whole, that Plaintiff was capable of performing the jobs of dowel inspector and bench hand.

*B. Handling limitation*

Plaintiff argues that the ALJ erred in failing to include a limitation on handling in the RFC. [ECF No. 15 at 6] Defendant counters that "[i]t is Plaintiff's burden to prove disability, and [Plaintiff] has offered little more than his own statements to support his claim that he cannot use his hands frequently." [ECF No. 20 at 5]

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). See also Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (quotation omitted). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

In assessing Plaintiff's ability to use his hands, the ALJ noted that Plaintiff was diagnosed with carpal tunnel syndrome in May 2015, with positive Phalen's testing bilaterally and surgery on the right carpal tunnel in August 2015. (Tr. 105) The ALJ wrote that "[t]here has been no further treatment apart from the medications for peripheral neuropathy," and Plaintiff declined surgery on his left carpal tunnel because "the right side release had not helped." (Id.) The ALJ observed that "there was no revision [surgery] done and none recommended" and the "evidence suggest[ed] only mild impairments that reduced his ability to finger objects to 'occasional[.]'" (Tr. 105-06) Accordingly, the ALJ included in Plaintiff's RFC a limitation to "occasional fingering," but placed no limitation on Plaintiff's ability to handle. (Tr. 107)

In support of his alleged need for a handling limitation, Plaintiff cites evidence of his history of carpal tunnel syndrome and carpal tunnel surgery. Plaintiff also cites his own testimony regarding pain that would "shoot up my arms," his inability to tie laces and button shirts, and his difficulty writing and holding a telephone. However, the ALJ discounted Plaintiff's complaints, finding that his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Tr. 108) Plaintiff does not

contest that determination here. <u>See</u>, <u>e.g.</u>, <u>Jeffries v. Berryhill</u>, No. 4:16cv00018JMB, 2017 WL 365439, at *5-6 (E.D. Mo. Jan. 25, 2017).

Plaintiff presented no medical opinion evidence supporting the need for a handling limitation. In fact, as the ALJ noted in his decision, the record contained "no function-by-function analyses of [Plaintiff's] physical ability by any of his treating providers." (Tr. 109) Nor did any doctor place restrictions on Plaintiff's use of his hands. As previously stated, the claimant has the burden of proving his limitations. <u>Goff</u>, 421 F.3d at 793 (claimant bears the burden of demonstrating RFC limitations). Plaintiff failed to carry that burden here.

## VII.    *Conclusion*

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of December, 2018